OPINION
{¶ 1} FIFTH THIRD BANK OF WESTERN OHIO ("FIFTH THIRD") APPEALS FROM AN ORDER OF THE MIAMI COUNTY COURT OF COMMON PLEAS, WHICH GRANTED THE MOTION OF SHEPARD GRAIN COMPANY, INC. ("SHEPARD GRAIN"), BYRON M. SHEPARD AND MARK B. SHEPARD FOR RELIEF FROM JUDGMENT, PURSUANT TO CIV.R. 60(B)(5).
{¶ 2} ON SEPTEMBER 30, 1994, FIFTH THIRD AND SHEPARD GRAIN ENTERED INTO A REVOLVING CREDIT AND SECURITY AGREEMENT ("THE 1994 AGREEMENT"), WHEREBY SHEPARD GRAIN WAS ABLE TO BORROW, BY MEANS OF A REVOLVING CREDIT LINE, THE LESSER OF $6,500,000 OR THE VALUE OF ITS "BORROWING BASE," AS CALCULATED BY A FORMULA SET FORTH IN SECTION 2.1 OF THE AGREEMENT. UNDER SECTION 8.2, IF ANY DEFAULT OCCURRED, FIFTH THIRD WAS PERMITTED TO DECLARE ALL OBLIGATIONS TO BE DUE AND PAYABLE IMMEDIATELY. THE 1994 AGREEMENT AND THE CORRESPONDING COGNOVIT NOTE HAD AN ORIGINAL MATURITY DATE OF DECEMBER 31, 1995. HOWEVER, FIFTH THIRD AND SHEPARD GRAIN REPEATEDLY RENEGOTIATED THE EXPIRATION DATE OF THE 1994 AGREEMENT AND THE MATURITY DATE OF ANY ACCOMPANYING COGNOVIT NOTES.
{¶ 3} IN 2002, SHEPARD GRAIN EXPERIENCED FINANCIAL DIFFICULTIES, MAINLY DUE TO THE INCREASING FAILURE OF ITS HOG OPERATIONS. IN AUGUST 2002 (PRIOR TO THE NOVEMBER 1, 2002, EXPIRATION DATE OF THE 1994 AGREEMENT, AS AMENDED), SHEPARD GRAIN AND FIFTH THIRD HELD DISCUSSIONS ABOUT EXTENDING THE LOAN ON BOTH SHEPARD GRAIN'S GRAIN AND HOG OPERATIONS, WITH THE HOG OPERATIONS CEASING IN APRIL 2003. IN LATE 2002, THE PARTIES ENTERED INTO TWO AMENDED AGREEMENTS.[1] THE FIRST, WHICH WAS DATED AS OF NOVEMBER 1, 2002 ("THE NOVEMBER 2002 AGREEMENT"), AMENDED SECTION 2.1(A) OF THE 1994 AGREEMENT AND PERMITTED SHEPARD GRAIN TO BORROW (1) $840,000, BY MEANS OF A TERM NOTE, FOR LIVESTOCK OPERATIONS, AND (2) THE LESSER OF $4,500,000 OR THE VALUE OF THE BORROWING BASE FOR GRAIN OPERATIONS. THIS AGREEMENT ADDED THAT SHEPARD GRAIN WOULD PROVIDE, AS ADDITIONAL COLLATERAL, 5,022 SHARES OF FIFTH THIRD BANKCORP COMMON STOCK OWNED BY BYRON SHEPARD AND PLEDGED TO FIFTH THIRD UNDER A SEPARATE PLEDGE AND THIRD PARTY COLLATERAL AGREEMENT. IN ADDITION, THE NOVEMBER 2002 AGREEMENT WAIVED SHEPARD GRAIN'S DEFAULTS OF SECTIONS 6.11, 6.12, AND 6.13 FOR THE PERIOD ENDING MAY 31, 2002; MODIFIED THE REQUIREMENTS REGARDING THE MINIMUM TANGIBLE NET WORTH AND RATIO OF CURRENT ASSETS TO CURRENT LIABILITIES IN THOSE SECTIONS; AND EXTENDED THE AGREEMENT UNTIL APRIL 1, 2003.
{¶ 4} THE SECOND AGREEMENT, DATED AS OF DECEMBER 18, 2002 AND EFFECTIVE AS OF NOVEMBER 1, 2002 ("THE DECEMBER 2002 AGREEMENT"), MADE ADDITIONAL AMENDMENTS, INCLUDING AMENDMENTS TO THE AMOUNT OF THE BORROWING BASE THAT IS REQUIRED TO BE MAINTAINED AND THE CALCULATION OF THE BORROWING BASE IN SECTION 2.1 AND TO THE SECURITY INTEREST PROVISIONS IN SECTION 3. THE PARTIES EMPHASIZE THAT THE DECEMBER 2002 AGREEMENT MODIFIED THE 1994 AGREEMENT, AS AMENDED, TO ALLOW SHEPARD GRAIN TO BORROW AN ADDITIONAL $500,000 UNDER THE TERMS OF THE BORROWING BASE.[2]
{¶ 5} IN JANUARY 2002, FIFTH THIRD RECEIVED A BORROWING BASE REPORT FROM SHEPARD GRAIN, DATED JANUARY 15, 2002, WHICH INDICATED THAT THE COMPANY WAS OUT OF COMPLIANCE WITH THE BORROWING BASE PROVISION IN SECTION 2.1 BY $18,683. FIFTH THIRD SUBSEQUENTLY RECEIVED A BORROWING BASE REPORT, DATED JANUARY 31, 2002, WHICH INDICATED THAT SHEPARD GRAIN WAS IN DEFAULT OF THAT PROVISION BY $429,249. CONSEQUENTLY, ON FEBRUARY 14, 2002, FIFTH THIRD SENT A NOTICE OF DEFAULT TO SHEPARD GRAIN, INFORMING THE COMPANY THAT IT WAS NOT IN COMPLIANCE WITH THE BORROWING BASE. FIFTH THIRD REQUIRED SHEPARD GRAIN TO PAY THE DEFICIENCY IMMEDIATELY. SHEPARD GRAIN FAILED TO DO SO.
{¶ 6} ON FEBRUARY 27, 2003, FIFTH THIRD TOOK JUDGMENT ON THE COGNOVIT NOTES BY VIRTUE OF A WARRANT OF ATTORNEY AND CONFESSION OF JUDGMENT AGAINST SHEPARD GRAIN AND THE INDIVIDUALS WHO GUARANTEED THE REPAYMENT OF THE COMPANY'S OBLIGATIONS TO FIFTH THIRD — BYRON M. SHEPARD, MARK B. SHEPARD, GEORGE SHEPARD, AND BRIAN SHEPARD. A RECEIVER WAS APPOINTED ON MARCH 3, 2003. ON MAY 20, 2003, SHEPARD GRAIN, ALONG WITH BYRON AND MARK SHEPARD, FILED A MOTION FOR RELIEF FROM JUDGMENT, PURSUANT TO CIV.R. 60(B). THE COURT SCHEDULED A HEARING ON THE MOTION, AND FIFTH THIRD SUBSEQUENTLY FILED A MOTION IN LIMINE TO EXCLUDE THE PRESENTATION OF PAROL EVIDENCE CONCERNING THE AGREEMENTS AT THAT HEARING. THE HEARING WAS HELD ON JULY 2, 2003, AND THE PARTIES FILED POST-HEARING MEMORANDA.
{¶ 7} ON SEPTEMBER 26, 2003, THE TRIAL COURT OVERRULED FIFTH THIRD'S MOTION IN LIMINE AND GRANTED THE MOTION FOR RELIEF FROM JUDGMENT. THE COURT CONCLUDED THAT SHEPARD GRAIN HAD FILED ITS MOTION IN A TIMELY FASHION. WITH REGARD TO WHETHER THE COMPANY HAD PRESENTED POTENTIALLY MERITORIOUS DEFENSES TO THE JUDGMENT, THE COURT CONCLUDED THAT SHEPARD GRAIN HAD NOT DEMONSTRATED THAT IT HAD NOT DEFAULTED ON THE GRAIN LINE OF CREDIT, AND THUS IT DID NOT DEMONSTRATE A MERITORIOUS DEFENSE TO THE JUDGMENT ON THAT GROUND. THE COURT FOUND, HOWEVER, THAT THERE WAS NO EVIDENCE THAT SHEPARD GRAIN HAD DEFAULTED ON THE HOG NOTE, AND THUS THAT IT HAD PRESENTED A POTENTIALLY MERITORIOUS BREACH OF CONTRACT DEFENSE TO THE JUDGMENT ON THAT NOTE. THE COURT PERMITTED SHEPARD GRAIN TO OFFER PAROL EVIDENCE, WHICH SUGGESTED (1) THAT FIFTH THIRD AND SHEPARD GRAIN HAD ENTERED INTO AN ORAL AGREEMENT WHEREBY FIFTH THIRD WOULD LOAN MONEY TO THE COMPANY UNCONDITIONALLY UNTIL OCTOBER 2003 IN EXCHANGE FOR BYRON SHEPARD'S STOCK, AND (2) THAT SHEPARD GRAIN MAY HAVE ENTERED INTO THE NOVEMBER AND DECEMBER 2002 AGREEMENTS DUE TO THREATS AND FRAUD. THE COURT FURTHER FOUND THAT THIS TESTIMONY SUPPORTED POTENTIAL DEFENSES TO THE JUDGMENT.
{¶ 8} FIFTH THIRD RAISES THREE ASSIGNMENTS OF ERROR ON APPEAL. WE ADDRESS THE ASSIGNMENTS IN A MANNER THAT FACILITATES OUR ANALYSIS.
{¶ 9} "SHEPARD'S [SIC] DID NOT FILE ITS MOTION FOR RELIEF IN A TIMELY MANNER, AND AS A RESULT, THE DECISION GRANTING SHEPARD RELIEF FROM JUDGMENT SHOULD BE OVERTURNED."
{¶ 10} IN ITS THIRD ASSIGNMENT OF ERROR, FIFTH THIRD ASSERTS THAT THE TRIAL COURT IMPROPERLY GRANTED SHEPARD GRAIN'S MOTION FOR RELIEF FROM JUDGMENT, BECAUSE THAT MOTION WAS UNTIMELY. THE SUPREME COURT HAS ESTABLISHED THE FOLLOWING STANDARD FOR CIV.R. 60(B) MOTIONS: "TO PREVAIL ON [A] MOTION UNDER CIV.R. 60(B), THE MOVANT MUST DEMONSTRATE THAT: (1) THE PARTY HAS A MERITORIOUS DEFENSE OR CLAIM TO PRESENT IF RELIEF IS GRANTED; (2) THE PARTY IS ENTITLED TO RELIEF UNDER ONE OF THE GROUNDS STATED IN CIV.R. 60(B)(1) THROUGH (5); AND (3) THE MOTION IS MADE WITHIN A REASONABLE TIME, AND, WHERE THE GROUNDS OF RELIEF ARE CIV.R. 60(B)(1), (2) OR (3), NOT MORE THAN ONE YEAR AFTER THE JUDGMENT, ORDER OR PROCEEDING WAS ENTERED OR TAKEN." GTE AUTOMATIC ELEC., INC. V. ARC INDUSTRIES, INC. (1976), 47 OHIO St.2d 146, 150,351 N.E.2d 113. ALL THREE ELEMENTS MUST BE ESTABLISHED, AND "THE TEST IS NOT FULFILLED IF ANY ONE OF THE REQUIREMENTS IS NOT MET." STRACK V. PELTON (1994), 70 OHIO St.3d 172, 174, 1994-OHIO-107,637 N.E.2d 914.
{¶ 11} IN OHIO, COGNOVIT JUDGMENTS PRESENT SPECIAL CIRCUMSTANCES, AND "[T]HE PREVAILING VIEW IS THAT RELIEF FROM A JUDGMENT TAKEN UPON A COGNOVIT NOTE, WITHOUT PRIOR NOTICE, IS WARRANTED BY AUTHORITY OF CIV. R. 60(B)(5) WHEN THE MOVANT (1) ESTABLISHES A MERITORIOUS DEFENSE, (2) IN A TIMELY APPLICATION." RIECK MECHANICAL ELECTRICAL SERV., INC. V. WARNER (JUNE 7, 2002), MONTGOMERY APP. NO. 19078; MEYERS V. McGUIRE (1992), 80 OHIO APP.3d 644, 646, 610 N.E.2d 542. MOREOVER, RULE 60(B) IS A REMEDIAL RULE, WHICH MUST BE LIBERALLY CONSTRUED. YONTZ V. KANE, (SEPT. 29, 1995), CLARK APP. NO. 95-CA-005, CITING ROSE CHEVROLET, INC. V. ADAMS (1988), 36 OHIO St.3d 17, 21,520 N.E.2d 564. "THUS, WHERE TIMELY RELIEF IS SOUGHT AND THE MOVANT HAS A MERITORIOUS DEFENSE, ANY DOUBT SHOULD BE RESOLVED IN FAVOR OF THE MOTION SO THAT CASES MAY BE DECIDED ON THEIR MERITS." ID. "THE TRIAL COURT HAS SUBSTANTIAL DISCRETION, BASED UPON THE PARTICULAR FACTS AND CIRCUMSTANCES, TO DETERMINE WHETHER A MOTION FOR RELIEF FROM JUDGMENT HAS BEEN MADE WITHIN A REASONABLE TIME." HUGHES V. OHIO ENERGY CINCINNATI, INC. (JUNE 29, 2001), GREENE APP. NO. 2001-CA-13. WE REVIEW THE TRIAL COURT'S DECISION FOR ABUSE OF DISCRETION. SEE GRIFFEY V. RAJAN (1987), 33 OHIO St.3d 75, 77,514 N.E.2d 1122; HUGHES V. GREEN TREE FINANCIAL SERVICING CORP., GREENE APP. NO. 2002-CA-27, 2002-OHIO-4465.
{¶ 12} FIFTH THIRD CLAIMS THAT SHEPARD GRAIN FAILED TO FILE ITS MOTION FOR RELIEF FROM JUDGMENT IN A TIMELY MANNER, BECAUSE THE COMPANY DID NOT OPPOSE THE APPOINTMENT OF A RECEIVER, AND IT DID NOT CHALLENGE THE JUDGMENT UNTIL APPROXIMATELY THREE MONTHS LATER, DURING WHICH TIME THE RECEIVER HAD BEEN ATTEMPTING TO LIQUIDATE THE ASSETS OF SHEPARD GRAIN. FIFTH THIRD ASSERTS THAT "[R]EASONABLENESS IN THE PRESENT CASE WOULD HAVE REQUIRED SHEPARD TO FILE ITS MOTION FOR RELIEF PRIOR TO, OR SHORTLY AFTER[,] THE RECEIVER WAS APPOINTED."
{¶ 13} IN THE PRESENT CASE, THE TRIAL COURT CONCLUDED THAT SHEPARD GRAIN'S ACQUIESCENCE TO THE APPOINTMENT OF A RECEIVER DID NOT RENDER THE FILING OF THE MOTION FOR RELIEF FROM JUDGMENT UNREASONABLE. IT FURTHER CONCLUDED, CITING JO-RENE CORP. V. JASTREZEBSKI, CUYAHOGA APP. NOS. 79933 AND 80310, 2002-OHIO-1550, ¶ 17 (THREE AND ONE HALF MONTH DELAY), THAT THE MOTION WAS FILED WITHIN A REASONABLE TIME.
{¶ 14} WE FIND NO ABUSE OF DISCRETION IN THE TRIAL COURT'S CONCLUSION. AT THE HEARING, BYRON SHEPARD TESTIFIED THAT THERE WAS A DELAY IN FILING THE CIV.R. 60(B) MOTION BECAUSE "IT TOOK US A LONG TIME TO GET THE PAPERS TOGETHER, AND THIS WAS THE FIRST TIME FOR US. IT WAS LIKE INVENTING THE WHEEL. * * * IMMEDIATELY WE WENT TO WORK TO GET THE PAPERS TO UNDERSTAND IT, TO READ IT, AND TRY TO FIGURE OUT WHAT WE WANTED TO DO, AND WHEN WE FINALLY DID, WE DID IT." (SHEPARD AT 10.) ALTHOUGH SHEPARD ACKNOWLEDGED THAT HE RELIED ON HIS ATTORNEY, HIS SON, AND THE OTHER OFFICERS OF SHEPARD GRAIN TO RESPOND TO FIFTH THIRD'S COMPLAINT, THE TRIAL COURT WAS FREE TO CREDIT HIS EXPLANATION FOR THE DELAY. MOREOVER, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT FOUND THAT THE APPOINTMENT OF THE RECEIVER DID NOT AFFECT THE REASONABLENESS OF SHEPARD GRAIN'S DELAY. THE RECEIVER WAS APPOINTED FIVE DAYS AFTER FIFTH THIRD OBTAINED A JUDGMENT AGAINST SHEPARD GRAIN AND THE INDIVIDUAL GUARANTORS. IN OUR JUDGMENT, SHEPARD GRAIN WAS NOT REQUIRED TO FILE ITS MOTION WITHIN THAT FIVE DAY PERIOD IN ORDER TO BE TIMELY. WE THEREFORE CONCLUDE THAT THE TRIAL COURT ACTED WITHIN ITS DISCRETION WHEN IT CONCLUDED THAT THE CIV.R. 60(B) MOTION WAS TIMELY.
{¶ 15} FIFTH THIRD'S THIRD ASSIGNMENT OF ERROR IS OVERRULED.
{¶ 16} "THE LOWER COURT ERRED IN OVERRULING FIFTH THIRD'S MOTION IN LIMINE AND ALLOWING SHEPARD TO INTRODUCE PAROLE [SIC] EVIDENCE IN THE FORM OF TESTIMONY AT TRIAL AND THROUGH AFFIDAVITS OF BYRON M. SHEPARD AND MARK B. SHEPARD."
{¶ 17} IN ITS FIRST ASSIGNMENT OF ERROR, FIFTH THIRD CHALLENGES THE TRIAL COURT'S DECISION TO PERMIT SHEPARD GRAIN TO OFFER PAROL EVIDENCE REGARDING ITS AGREEMENTS WITH FIFTH THIRD AT THE CIV.R. 60(B) HEARING. FIFTH THIRD STATES THAT THE 1994 AGREEMENT, AS AMENDED IN 2002, CLEARLY SETS FORTH THE MATURITY DATE AND THE TERMS OF DEFAULT. SPECIFICALLY, THE BANK INDICATES THAT THE NOVEMBER AND DECEMBER 2002 AGREEMENTS STATE THAT THE LOAN WAS EXTENDED THROUGH APRIL 1, 2003, AND THE AGREEMENTS DID NOT ALTER THE DEFAULT PROVISIONS CONTAINED IN THE ORIGINAL 1994 AGREEMENT. FIFTH THIRD ASSERTS THAT SHEPARD GRAIN IMPERMISSIBLY OFFERED PAROL EVIDENCE IN AN ATTEMPT TO ALTER THE TERMS OF SUBSEQUENT WRITTEN, INTEGRATED AGREEMENTS, I.E., THE NOVEMBER AND DECEMBER 2002 AGREEMENTS.
{¶ 18} "THE PAROL EVIDENCE RULE IS A RULE OF SUBSTANTIVE LAW THAT PROHIBITS PARTIES TO A CONTRACT FROM LATER CONTRADICTING THE EXPRESS TERMS OF THE CONTRACT WITH EVIDENCE OF OTHER ALLEGED OR ACTUAL AGREEMENTS. ABSENT CLAIMS OF FRAUD, MISTAKE OR SOME OTHER INVALIDATING CAUSE, THE PARTIES' WRITTEN AGREEMENT MAY THEREFORE NOT BE VARIED, CONTRADICTED, OR SUPPLEMENTED BY OR ON ACCOUNT OF EVIDENCE OF PRIOR OR CONTEMPORANEOUS ORAL AGREEMENTS, OR BY WRITTEN AGREEMENTS WHICH THE TERMS OF THE PRINCIPAL CONTRACT DO NOT EXPRESSLY AUTHORIZE." EVILSIZOR V. BECRAFT SONS GEN. CONTRACTORS, LTD., CLARK APP. NO. 03-CA-0069, 2004-OHIO-1306
(CITATIONS OMITTED). IN GENERAL, THE MEANING OF A CONTRACT SHOULD BE CONSTRUED FROM WITHIN THE FOUR CORNERS OF THE INSTRUMENT. ROSS V. OHIO BAR LIAB. INS. CO. (1998), 124 OHIO APP.3d 591, 595,706 N.E.2d 867; ROBINSON V. ROBINSON (DEC. 3, 1999), MONTGOMERY APP. NO. 17562. COURTS PRESUME THAT THE INTENT OF THE PARTIES IS EXPRESSED THROUGH THE LANGUAGE OF THE CONTRACT. SHIFRIN V. FOREST CITY ENT., INC., 64 OHIO St.3d 635, 638, 1992-OHIO-28,597 N.E.2d 499. WE REVIEW THE TRIAL COURT'S DECISION ON FIFTH THIRD'S MOTION IN LIMINE DE NOVO.
{¶ 19} SHEPARD GRAIN ARGUES THAT, AT THE END OF AUGUST 2002, FIFTH THIRD AND SHEPARD GRAIN HAD AGREED TO AN ONGOING CREDIT RELATIONSHIP IN WHICH THE HOG TERM NOTE WOULD BE TERMINATED ON APRIL 1, 2003, AND THE GRAIN REVOLVING CREDIT NOTE WOULD CONTINUE UNTIL OCTOBER 31, 2003. SHEPARD GRAIN FURTHER ASSERTS THAT THE SOLE PURPOSE OF THE AUGUST 2002 ORAL AGREEMENT WAS TO OBTAIN BYRON SHEPARD'S STOCK IN ORDER TO OBTAIN SUFFICIENT LEVERAGE TO FORCE SHEPARD GRAIN TO SIGN THE NOVEMBER AND DECEMBER 2002 AGREEMENTS.
{¶ 20} IN SUPPORT OF ITS ASSERTION THAT AN AUGUST 2002 AGREEMENT HAD BEEN REACHED, SHEPARD GRAIN CITES TO THE TESTIMONY OF KAREN ELIASON, RELATIONSHIP MANAGER AT FIFTH THIRD FOR SHEPARD GRAIN, IN WHICH SHE STATED:
{¶ 21} "Q: AND SHEPARD GRAIN'S UNDERSTANDING WAS THAT ONLY THE HOG LINE WOULD BE TERMINATED APRIL THE 1ST, CORRECT?
{¶ 22} "A: AS OF AUGUST, THAT WAS THE UNDERSTANDING.
{¶ 23} "Q: YES. AND THE OTHER LOAN, THE GRAIN LOAN, WOULD GO ON AFTER THAT?
{¶ 24} "A: THAT WAS THE UNDERSTANDING IN AUGUST. THAT DID CHANGE BEFORE WE SIGNED THE LOAN PAPERS.
{¶ 25} * * *
{¶ 26} "Q: SO IN AUGUST WHEN THE DOOR WAS OPEN TO EXTENDING THIS LOAN CONSISTENT WITH PREVIOUS LOANS FOR A YEAR, WHICH WOULD HAVE BEEN THROUGH OCTOBER, CORRECT?
{¶ 27} "A: OF THE NEXT YEAR, YES.
{¶ 28} "Q: OKAY. THAT'S WHEN YOU ASKED BYRON SHEPARD FOR HIS STOCK, ISN'T IT?
{¶ 29} "A: YES.
{¶ 30} "Q: SO AT THE TIME YOU ASKED BYRON SHEPARD FOR HIS STOCK, IT WAS CLEARLY BELIEVED BY BOTH FIFTH THIRD AND BYRON AND SHEPARD, THAT THE GRAIN LOAN WOULD GO PAST APRIL THE 1ST?
{¶ 31} "A: IN AUGUST THAT WAS THE THOUGHT PROCESS."
{¶ 32} (ELIASON AT 136-37). IN ITS DECISION, THE TRIAL COURT ACKNOWLEDGED THIS TESTIMONY AND ADDITIONAL TESTIMONY OF ELIASON, IN WHICH SHE STATED THAT ALTHOUGH BYRON SHEPARD WAS UNDER THE IMPRESSION THAT THE LOAN WOULD GO ON BEYOND APRIL 1, 2003, AT THE TIME THAT HE TURNED OVER HIS STOCK, FIFTH THIRD HAD MADE VERY CLEAR BY THE TIME THE PAPERS WERE SIGNED IN NOVEMBER THAT THE TERMINATION DATE WAS APRIL 1, 2003.
{¶ 33} THE TRIAL COURT ALSO NOTED THE TESTIMONY OF BYRON SHEPARD, IN WHICH HE STATED: "Q: ALL RIGHT. WAS THERE A TIME, MR. SHEPARD, WHEN FIFTH THIRD CAME TO YOU AND ASKED YOU TO TURN OVER YOUR FIFTH THIRD BANK CORP. STOCK?
{¶ 34} "A: YES.
{¶ 35} "Q: DO YOU RECALL WHEN THAT WAS?
{¶ 36} "A: I CAN'T RECALL THE EXACT DATE.
{¶ 37} "Q: OKAY. DID YOU AGONIZE OVER THE DECISION AS WHETHER TO TURN IT OVER TO THEM?
{¶ 38} "A: WELL, THIS REPRESENTED MY LIFE SAVINGS AND YES, I DID, BUT I DECIDED FOR THE GOOD OF THE COMPANY, THAT THEY WERE GONNA EXTEND THE LINE FOR A GOOD WHILE AND I FELT THAT I — THAT'S WHAT I WANTED TO DO.
{¶ 39} "Q: WHEN YOU MADE THE DECISION TO TURN YOUR STOCK OVER, PLEDGE IT TO FIFTH THIRD, WHAT WAS YOUR UNDERSTANDING OF HOW LONG THEY WOULD LEND MONEY TO YOU?
{¶ 40} "A: THEY WERE GONNA GO THROUGH OCTOBER, AND I HOPED EVEN FARTHER THAN THAT. I FELT IF WE GOT THAT FAR WE'D GET INTO HARVEST AND THEY'D STAY WITH US. BUT DEFINITELY THROUGH OCTOBER.
{¶ 41} "Q: OCTOBER, 2003?
{¶ 42} "A: YES."
{¶ 43} THE TRIAL COURT REJECTED FIFTH THIRD'S CONTENTION THAT THE ABOVE TESTIMONY WAS BARRED BY THE PAROL EVIDENCE RULE. AT THE OUTSET, THE COURT ACKNOWLEDGED THAT, STANDING ALONE, SHEPARD'S TESTIMONY INVOLVED MATTERS THAT WERE INTRINSIC TO THE TERMS OF THE SUBSEQUENT AGREEMENT AND ATTEMPTED TO VARY THE TERMS CONTAINED IN THE WRITTEN DOCUMENT. HOWEVER, IT NOTED THAT THE AFFIDAVIT OF BYRON SHEPARD INDICATED THAT THE LOAN DOCUMENTS WERE SIGNED AND THE BANK STOCK COLLATERAL WAS DEPOSITED BY BYRON SHEPARD IN RELIANCE ON THE REPRESENTATIONS THAT FIFTH THIRD WOULD PROVIDE NEW WRITTEN LOAN AGREEMENTS AFTER APRIL 1, THAT WOULD EXTEND THE LOAN UNTIL OCTOBER, 2003, AND, FURTHER, THAT HE HAD SIGNED THE SUBSEQUENT WRITTEN DOCUMENTS BASED ON THREATS THAT HIS STOCK WOULD BE SOLD IF HE DID NOT SIGN. THE COURT THEREFORE CONCLUDED THAT THE PAROL EVIDENCE RULE DID NOT BAR CONSIDERATION OF BYRON'S TESTIMONY AND AFFIDAVIT. IN ADDITION, IT CONCLUDED THAT THE AFFIDAVITS PRESENTED SUFFICIENT FACTS TO SUPPORT THE POTENTIALLY VALID DEFENSES OF FRAUD, BREACH OF ORAL CONTRACT, AND PROMISSORY ESTOPPEL.
{¶ 44} FIFTH THIRD ASSERTS THAT THE TRIAL COURT ERRED IN PERMITTING THIS EXTRINSIC EVIDENCE. IT STATES THAT, ACCORDING TO SHEPARD'S ALLEGATIONS, FIFTH THIRD ESSENTIALLY AGREED TO FUND SHEPARD GRAIN UNCONDITIONALLY THROUGH OCTOBER OF 2003. FIFTH THIRD ASSERTS THAT THIS EVIDENCE "IS PRECISELY THE EVIDENCE THAT THE PAROLE [SIC] EVIDENCE RULE BARS FROM INTRODUCTION TO PROTECT THE INTEGRITY OF WRITTEN AGREEMENTS." THE BANK FUTHER ARGUES THAT EXTRINSIC EVIDENCE OF FRAUD CANNOT BE INTRODUCED TO CONTRADICT AN INTEGRATED AGREEMENT IF THE ALLEGED MISREPRESENTATION CONTRADICTS THE WRITTEN CONTRACT.
{¶ 45} IN GALMISH V. CICCHINI, 90 OHIO St.3d 22, 2000-OHIO-7,734 N.E.2d 782, THE SUPREME COURT OF OHIO REITERATED THE SCOPE OF THE PAROL EVIDENCE RULE IN THE CONTEXT OF FRAUD IN THE INDUCEMENT:
{¶ 46} "[T]HE PAROL EVIDENCE RULE DOES NOT PROHIBIT A PARTY FROM INTRODUCING PAROL OR EXTRINSIC EVIDENCE FOR THE PURPOSE OF PROVING FRAUDULENT INDUCEMENT. * * * FRAUD CANNOT BE MERGED; HENCE THE DOCTRINE, WHICH IS MERELY ONLY ANOTHER FORM OF EXPRESSION OF THE PAROL-EVIDENCE RULE, THAT PRIOR NEGOTIATIONS AND CONVERSATIONS LEADING UP TO THE FORMATION OF A WRITTEN CONTRACT ARE MERGED THEREIN, IS NOT APPLICABLE TO PRECLUDE THE ADMISSION OF PAROL OR EXTRINSIC EVIDENCE TO PROVE THAT A WRITTEN CONTRACT WAS INDUCED BY FRAUD.
{¶ 47} "STATED DIFFERENTLY, `[I]T WAS NEVER INTENDED THAT THE PAROL EVIDENCE RULE COULD BE USED AS A SHIELD TO PREVENT THE PROOF OF FRAUD, OR THAT A PERSON COULD ARRANGE TO HAVE AN AGREEMENT WHICH WAS OBTAINED BY HIM THROUGH FRAUD EXERCISED UPON THE OTHER CONTRACTING PARTY REDUCED TO WRITING AND FORMALLY EXECUTED, AND THEREBY DEPRIVE THE COURTS OF THE POWER TO PREVENT HIM FROM REAPING THE BENEFITS OF HIS DECEPTION OR CHICANERY.' * * *
{¶ 48} "HOWEVER, THE PAROL EVIDENCE RULE MAY NOT BE AVOIDED `BY A FRAUDULENT INDUCEMENT CLAIM WHICH ALLEGES THAT THE INDUCEMENT TO SIGN THE WRITING WAS A PROMISE, THE TERMS OF WHICH ARE DIRECTLY CONTRADICTED BY THE SIGNED WRITING. ACCORDINGLY, AN ORAL AGREEMENT CANNOT BE ENFORCED IN PREFERENCE TO A SIGNED WRITING WHICH PERTAINS TO EXACTLY THE SAME SUBJECT MATTER, YET HAS DIFFERENT TERMS.' IN OTHER WORDS, `[T]HE PAROL EVIDENCE RULE WILL NOT EXCLUDE EVIDENCE OF FRAUD WHICH INDUCED THE WRITTEN CONTRACT. BUT, A FRAUDULENT INDUCEMENT CASE IS NOT MADE OUT SIMPLY BY ALLEGING THAT A STATEMENT OR AGREEMENT MADE PRIOR TO THE CONTRACT IS DIFFERENT FROM THAT WHICH NOW APPEARS IN THE WRITTEN CONTRACT. QUITE TO THE CONTRARY, ATTEMPTS TO PROVE SUCH CONTRADICTORY ASSERTIONS IS EXACTLY WHAT THE PAROL EVIDENCE RULE WAS DESIGNED TO PROHIBIT.'
{¶ 49} "THE SAME CONCEPT — THAT THE PROFFERED EVIDENCE OF FRAUD MUST SHOW MORE THAN A MERE VARIATION BETWEEN THE TERMS OF THE WRITTEN AND PAROL AGREEMENT — APPLIES TO ALLEGATIONS OF PROMISSORY FRAUD, WHICH IS THE TYPE OF FRAUD THAT GALMISH CLAIMS INDUCED HER TO ENTER INTO THE CONTRACT WITH CICCHINI. THUS, `[T]HE RULE EXCLUDING PAROL EVIDENCE OF COLLATERAL PROMISES TO VARY A WRITTEN CONTRACT DOES NOT APPLY WHERE SUCH CONTRACT IS INDUCED BY PROMISES FRAUDULENTLY MADE, WITH NO INTENTION OF KEEPING THEM * * *.' HOWEVER, THE PAROL EVIDENCE RULE DOES APPLY `TO SUCH PROMISSORY FRAUD IF THE EVIDENCE IN QUESTION IS OFFERED TO SHOW A PROMISE WHICH CONTRADICTS AN INTEGRATED WRITTEN AGREEMENT. UNLESS THE FALSE PROMISE IS EITHER INDEPENDENT OF OR CONSISTENT WITH THE WRITTEN INSTRUMENT, EVIDENCE THEREOF IS INADMISSIBLE.' BY THE SAME TOKEN, `IF THE WRITTEN CONTRACT PROVIDES FOR THE DOING OF AN ACT ON A CERTAIN CONDITION, THE PROMISEE CANNOT SHOW THAT THE PROMISE WAS AN ABSOLUTE ONE MERELY BY CLAIMING FRAUD, UNLESS HE PRODUCES SOME OTHER EVIDENCE OF THE ALLEGED FRAUD.'" ID. AT 28-30 (CITATIONS AND FOOTNOTES OMITTED).
{¶ 50} IN THE INSTANT CASE, THE 1994 AGREEMENT AND THE AMENDMENTS THERETO EXPRESSLY STATE THAT THE AGREEMENTS ARE INTEGRATED, AND SHEPARD GRAIN HAS NOT CONTESTED THAT STATEMENT. MOREOVER, AS ARGUED BY FIFTH THIRD, THE 1994 AGREEMENT, AS AMENDED IN 2002, SETS FORTH THE EXPIRATION DATE OF THE LOANS, AS WELL AS THE PROVISIONS AND REMEDIES FOR DEFAULT. THUS, AS ACKNOWLEDGED BY THE TRIAL COURT, SHEPARD'S TESTIMONY REGARDING THE TERMS OF THE ALLEGED AUGUST 2002 AGREEMENT BETWEEN FIFTH THIRD AND SHEPARD GRAIN (I.E., THAT SHEPARD GRAIN WOULD RECEIVE A LOAN FROM FIFTH THIRD UNTIL OCTOBER, 2003, AND THAT ANY DEFAULTS WOULD BE WAIVED) CONTRADICT THE EXPRESS TERMS OF THE SUBSEQUENT AGREEMENTS IN NOVEMBER AND DECEMBER 2002. TO THE EXTENT THAT SHEPARD GRAIN OFFERED PAROL EVIDENCE IN AN ATTEMPT TO ENFORCE THE TERMS OF THE ALLEGED AUGUST 2002 AGREEMENT, THE PAROL EVIDENCE RULE BARS THAT EVIDENCE.
{¶ 51} HOWEVER, AS FURTHER RECOGNIZED BY THE TRIAL COURT, SHEPARD'S TESTIMONY ALSO SERVES TO SUPPORT THE ALLEGATION THAT THE NOVEMBER AND DECEMBER 2002 AGREEMENTS WERE EXECUTED DUE TO FRAUD AND THREATS ON THE PART OF FIFTH THIRD. BYRON SHEPARD TESTIFIED THAT HE PLEDGED HIS FIFTH THIRD BANK CORP. STOCK TO FIFTH THIRD BECAUSE HE UNDERSTOOD THAT FIFTH THIRD WAS GOING TO LEND SHEPARD GRAIN MONEY THROUGH OCTOBER 2003. SHEPARD AT 3. HE INDICATED THAT, HAD HE KNOWN THAT FIFTH THIRD WAS GOING TO KEEP THE LINE OF CREDIT OPEN ONLY UNTIL FEBRUARY OF 2003, HE WOULD NOT HAVE TURNED HIS LIFE SAVINGS OVER TO THE BANK. ID. AT 4. BYRON SHEPARD FURTHER TESTIFIED THAT HIS DISCUSSIONS WITH FIFTH THIRD ABOUT HIS STOCK WERE UNRELATED TO THE BORROWING BASE, AND THAT "THE SENIOR OFFICERS FROM DAYTON SAID WE'RE GONNA HOLD THIS STOCK AND WE'RE NOT GONNA SELL IT. IT'S JUST BEING HELD THERE." ID. AT 4, 8.
{¶ 52} IN HIS AFFIDAVIT, BYRON SHEPARD INDICATED THAT HE HAD AGREED TO TRANSFER HIS FIFTH THIRD BANK CORP. COMMON STOCK UNDER A PLEDGE AGREEMENT AND THIRD-PARTY COLLATERAL AGREEMENT TO FIFTH THIRD IN RELIANCE UPON THE REPRESENTATION OF FIFTH THIRD THAT IT WOULD EXTEND CREDIT TO SHEPARD GRAIN AT LEAST UNTIL OCTOBER 1, 2003. NOTABLY, SHEPARD STATED THAT, AFTER HE HAD PLEDGED 5,022 SHARES OF FIFTH THIRD BANK CORP. COMMON STOCK, HE WAS PRESENTED WITH THE AGREEMENTS EXTENDING SHEPARD GRAIN CREDIT UNTIL APRIL 1, 2003 (I.E., NOT UNTIL OCTOBER 1, 2003). SHEPARD FURTHER STATED THAT WHEN HE HAD QUESTIONED FIFTH THIRD ABOUT THE APRIL 1, 2003, DATE, HE WAS TOLD "THAT IF THE AGREEMENTS WERE NOT SIGNED, THE LOAN WOULD NOT BE EXTENDED, SHEPARD GRAIN WOULD BE [IN] DEFAULT AND THEY WOULD FORECLOSE AND SELL [THE] 5,022 SHARES OF FIFTH THIRD BANK CORP. COMMON STOCK WHICH [HE] HAD PREVIOUSLY PLEDGED TO FIFTH THIRD."
{¶ 53} BASED ON THIS EVIDENCE, SHEPARD GRAIN HAS PRESENTED EVIDENCE THAT FIFTH THIRD HAD OBTAINED SHEPARD'S COMMON STOCK BASED ON MISREPRESENTATIONS, AND THAT FIFTH THIRD THREATENED BYRON SHEPARD WITH THE SALE OF THAT STOCK IN ORDER TO OBTAIN THE COMPANY'S AGREEMENT TO THE NOVEMBER AND DECEMBER 2002 AGREEMENTS, WHICH CONTRADICTED THE TERMS TO WHICH THEY HAD PREVIOUSLY AGREED IN AUGUST OF 2002. IN OTHER WORDS, SHEPARD GRAIN'S PAROL EVIDENCE DOES NOT RELATE TO THE TERMS OF THE AGREEMENT BUT, RATHER, TO THE VALIDITY OF THE AGREEMENT. THE PAROL EVIDENCE RULE DOES NOT PROHIBIT THE ADMISSION OF EXTRINSIC EVIDENCE FOR THAT PURPOSE. SEE GALMISH, SUPRA. ACCORDINGLY, THE TRIAL COURT DID NOT ERR IN CONCLUDING THAT SHEPARD GRAIN COULD PRESENT PAROL EVIDENCE IN THE FORM OF BYRON SHEPARD'S TESTIMONY AND AFFIDAVIT AND KAREN ELIASON'S TESTIMONY REGARDING THE CIRCUMSTANCES SURROUNDING THE SURRENDERING OF THE STOCK AND THE SIGNING OF THE NOVEMBER AND DECEMBER 2002 AGREEMENTS.
{¶ 54} SHEPARD GRAIN ASSERTS THAT PAROL EVIDENCE OF THE AUGUST 2002 AGREEMENT IS PERMISSIBLE, BECAUSE IT IS NECESSARY TO EXPLAIN A LATENT AMBIGUITY IN THE NOVEMBER AND DECEMBER 2002 AGREEMENTS. IN PARTICULAR, THE COMPANY ASSERTS THAT THE AGREEMENTS FAIL TO MAKE ANY REFERENCE TO THE INTENT OF THE PARTIES WITH RESPECT TO THE ADDITIONAL COLLATERAL PROVIDED BY BYRON SHEPARD (I.E., THE STOCK) AND ITS EFFECT UPON THE BORROWING BASE. WE FIND NO AMBIGUITY. SECTION 3.1 OF THE 1994 AGREEMENT PROVIDES THAT: "TO INDUCE BANK TO MAKE THE LOANS, AND AS SECURITY FOR ALL OBLIGATIONS, BORROWER HEREBY ASSIGNS TO BANK AS COLLATERAL AND GRANTS TO BANK A CONTINUING PLEDGE AND SECURITY INTEREST IN THE FOLLOWING PROPERTY OF BORROWER * * *." UNDER THE NOVEMBER 2002 AMENDMENT, THE 5,022 SHARES OF FIFTH THIRD BANKCORP COMMON STOCK OWNED BY BYRON SHEPARD WERE ADDED AS ADDITIONAL COLLATERAL. THE FACT THAT THE AGREEMENTS DID NOT LINK THE BORROWING BASE TO THE SPECIFIC COLLATERAL PROVIDED IN SECTION 3 DOES NOT CREATE AN AMBIGUITY, PATENT OR LATENT. IN OUR JUDGMENT, THE PAROL EVIDENCE REGARDING THE AUGUST 2002 AGREEMENT WAS NOT ADMISSIBLE ON THE GROUND THAT A LATENT AMBIGUITY EXISTED.
{¶ 55} AS AN ADDITIONAL BASIS IN SUPPORT OF THE TRIAL COURT'S CONCLUSION THAT THE PAROL EVIDENCE WAS ADMISSIBLE, SHEPARD GRAIN RAISES A NEW ARGUMENT THAT THE TESTIMONY OF KAREN ELIASON ESTABLISHES THAT THE NOVEMBER AND DECEMBER 2002 AGREEMENTS PLACED SHEPARD GRAIN IN DEFAULT IMMEDIATELY UPON THEIR EXECUTION AND, THEREFORE, FIFTH THIRD MADE ILLUSORY PROMISES. WE AGREE WITH SHEPARD GRAIN THAT PAROL EVIDENCE MAY BE OFFERED FOR THE PURPOSE OF ESTABLISHING THAT THE PURPORTED CONTRACT WAS NOT VALID. HOWEVER, ELIASON'S TESTIMONY, READ AS A WHOLE, DOES NOT SUPPORT THAT CONCLUSION. ALTHOUGH ELIASON TESTIFIED THAT ON NOVEMBER 15, 2002, SHEPARD GRAIN OWED $4,716,169 ON THE REVOLVING LINE OF CREDIT, SHE SUBSEQUENTLY TESTIFIED THAT THOSE CALCULATIONS WERE NOT BASED ON FIFTH THIRD'S CALCULATIONS BASED ON THE BORROWING BASE. TERRY WARNKE, COMMERCIAL LOAN OFFICER AT FIFTH THIRD, FURTHER TESTIFIED THAT SHEPARD GRAIN WAS NOT OUT OF COMPLIANCE WITH THE BORROWING BASE WHEN THE NOVEMBER AND DECEMBER 2002 AGREEMENTS WERE EXECUTED, AND THAT THEY HAD MADE AN ADDITIONAL $500,000 AVAILABLE TO SHEPARD GRAIN SO THAT IT WOULD NOT BE IN DEFAULT OF THAT PROVISION IN THE FUTURE, AS ANTICIPATED BY THE COMPANY'S PROJECTIONS. WE FIND NO BASIS FOR THE TRIAL COURT TO HAVE CONCLUDED THAT THE DECEMBER 2002 AGREEMENT WAS ILLUSORY.
{¶ 56} FINALLY, WE NOTE THAT SHEPARD GRAIN HAD OFFERED TESTIMONY IN SUPPORT OF ITS ASSERTION THAT THE COMPANY HAD NOT DEFAULTED ON ITS OBLIGATIONS UNDER THE AGREEMENTS. IN PARTICULAR, KAREN ELIASON AND BYRON SHEPARD TESTIFIED AS TO WHETHER FIFTH THIRD'S LOANS TO SHEPARD GRAIN EXCEEDED THE AMOUNT OF THE BORROWING BASE. THE EVIDENCE REGARDING SHEPARD GRAIN'S ALLEGED DEFAULT DOES NOT PURPORT TO ALTER, MODIFY, OR CONTRADICT THE TERMS OF THE DOCUMENTS AT ISSUE. ACCORDINGLY, THE PAROL EVIDENCE RULE DOES NOT PROHIBIT THE ADMISSION OF THIS EVIDENCE. THE TRIAL COURT DID NOT ERR IN CONSIDERING THIS EVIDENCE IN DETERMINING WHETHER SHEPARD GRAIN HAD A POTENTIAL DEFENSE OF LACK OF DEFAULT.
{¶ 57} THE FIRST ASSIGNMENT OF ERROR IS OVERRULED.
{¶ 58} "THE TRIAL COURT ERRED IN FINDING THAT SHEPARD ESTABLISHED OPERATIVE FACTS THAT SUPPORT ITS ALLEGED DEFENSES TO FIFTH THIRD'S COMPLAINT BECAUSE ALL OF THE ALLEG[E]D DEFENSES ARE BASED ON INADMISSIBLE PAROLE [SIC] EVIDENCE."
{¶ 59} IN ITS SECOND ASSIGNMENT OF ERROR, FIFTH THIRD ARGUES THAT THE TRIAL COURT ERRED IN CONCLUDING THAT SHEPARD GRAIN COULD PRESENT POTENTIALLY MERITORIOUS DEFENSES TO ITS JUDGMENT. FIFTH THIRD ARGUES THAT THE PROPER APPLICATION OF THE PAROL EVIDENCE RULE EVISCERATES SHEPARD GRAIN'S ABILITY TO ESTABLISH A DEFENSE TO FIFTH THIRD'S RIGHT TO JUDGMENT AGAINST IT, THUS PRECLUDING CIV.R. 60(B) RELIEF.
{¶ 60} IN ESTABLISHING A MERITORIOUS DEFENSE FOR PURPOSES OF ITS CIV.R. 60(B) MOTION, SHEPARD GRAIN WAS REQUIRED "TO SET FORTH WITH SUFFICIENT CLARITY AND PARTICULARITY THE FACTS THAT [IT] CLAIMS ENTITLES [IT] TO RELIEF FROM JUDGMENT IN ORDER THAT THE TRIAL COURT MAY MAKE A [THRESHOLD] DETERMINATION WHETHER THOSE FACTS, IF PROVEN, WOULD ENTITLED IT TO THE RELIEF REQUESTED." SECURITY NATIONAL BANK AND TRUST CO. V. BROOCK (OCT. 20, 1993), CLARK APP. NO. 3006, QUOTING BORROR V. BORROR (OCT. 15, 1987), DARKE APP. NO. 1188-CA. IF THOSE FACTS, IF PROVEN, WOULD NOT, AS A MATTER OF LAW, ENTITLE THE COMPANY TO RELIEF, THEN THE TRIAL COURT COULD PROPERLY DENY THE MOTION. IN ADDITION, SHEPARD GRAIN MUST HAVE PRESENTED MORE THAN MERE GENERAL ALLEGATIONS OR CONCLUSIONS. HOWEVER, THE COMPANY WAS NOT REQUIRED TO PROVE THAT IT WOULD PREVAIL ON THAT DEFENSE. RIECK, SUPRA. THE DETERMINATION AS TO WHETHER SUFFICIENT OPERATIVE FACTS WERE DEMONSTRATED TO JUSTIFY VACATING A JUDGMENT IS LEFT TO THE DISCRETION OF THE TRIAL COURT. BROOCK, SUPRA, CITING DODDRIDGE V. FITZPATRICK (1978), 53 OHIO St.2d 9, 12, 371 N.E.2d 214. WE THEREFORE REVIEW THE TRIAL COURT'S DETERMINATION FOR AN ABUSE OF DISCRETION.
{¶ 61} IN ITS RULING, THE TRIAL COURT INDICATED THAT SHEPARD GRAIN HAD ASSERTED NUMEROUS POTENTIAL DEFENSES — LACK OF DEFAULT, FRAUD, BREACH OF AN ORAL CONTRACT AND PROMISSORY ESTOPPEL. BEGINNING WITH DEFAULT, THE TRIAL COURT FOUND THAT SHEPARD GRAIN HAD NOT PRESENTED OPERATIVE FACTS THAT REFUTED FIFTH THIRD'S EVIDENCE THAT IT WAS IN DEFAULT ON THE REVOLVING CREDIT NOTE. THE COURT NOTED THAT FIFTH THIRD HAD BROUGHT ITS ACTION BASED ON AN ACCELERATION CLAUSE, WHICH WAS TRIGGERED BY THE AMOUNT OF THEIR LOAN EXCEEDING THE BORROWING BASE. THE COURT STATED:
{¶ 62} "IT IS UNDISPUTED THAT THE AMOUNT OF CREDIT AND TERMS OF PAYMENT WERE DETERMINED UNDER THE CONDITIONS OF THE CREDIT FACILITY ORIGINALLY ENTERED INTO IN 1995 AND AMENDED IN DECEMBER, 2002. AS AMENDED, THE CREDIT FACILITY ALLOWED SHEPARD GRAIN TO BORROW $500,000 MORE UNDER THE BORROWING BASE TO BRING SHEPARD GRAIN INTO COMPLIANCE WITH THE TERMS OF THE AGREEMENT.
{¶ 63} "EVEN WITH THE SAID INCREASE IN THE LINE OF CREDIT, THE EVIDENCE IS UNCONTRADICTED THAT SHEPARD GRAIN WAS OUT OF COMPLIANCE ON JANUARY 31, 2003 BY APPROXIMATELY $429,000.00. UNDER THE TERMS OF THE CREDIT FACILITY[,] SHEPARD GRAIN WAS REQUIRED TO IMMEDIATELY REPAY ANY DEFICIENCY. IN THE ABSENCE OF SUCH PAYMENT[,] THE LOAN AGREEMENTS ALLOW FIFTH THIRD TO ACCELERATE THE AMOUNT DUE ON THE REVOLVING LOAN NOTE."
{¶ 64} (DECISION AT 6). THE TRIAL COURT FURTHER RECOGNIZED THAT FIFTH THIRD SENT SHEPARD GRAIN A NOTICE OF DEFAULT ON FEBRUARY 14, 2003, AND THAT SHEPARD GRAIN FAILED TO PAY THE DEFICIENCY. THE TRIAL COURT DISCOUNTED, AS UNSUBSTANTIATED, THE CONCLUSORY TESTIMONY OF BYRON SHEPARD AND THE AFFIDAVIT OF MARK SHEPARD THAT SHEPARD GRAIN WAS NOT IN DEFAULT ON THE GRAIN REVOLVING CREDIT NOTE. SHEPARD GRAIN DOES NOT CHALLENGE THE TRIAL COURT'S CONCLUSION, AND WE FIND NO ABUSE OF DISCRETION IN THE COURT'S DETERMINATION.
{¶ 65} AS TO THE HOG LINE TERM NOTE, THE COURT FOUND NO EVIDENCE THAT SHEPARD GRAIN HAD DEFAULTED. THE COURT NOTED THAT SHEPARD GRAIN HAD PRESENTED EVIDENCE THAT IT HAD MADE SUBSTANTIAL PAYMENTS ON THE NOTE, AND THAT IT WAS NOT DUE UNTIL APRIL 1, 2003. BECAUSE THE HOG LINE NOTE INDICATES THAT IT WAS A TERM LOAN, DUE ON APRIL 1, 2003, THE TRIAL COURT CONCLUDED THAT SHEPARD GRAIN HAD A POTENTIALLY MERITORIOUS BREACH OF CONTRACT DEFENSE TO JUDGMENT ON THIS NOTE.
{¶ 66} WE DISAGREE. THE DECEMBER 2002 AGREEMENT, WHICH WAS THE LAST AMENDMENT TO THE 1994 AGREEMENT, PROVIDED THAT SHEPARD GRAIN WOULD RECEIVE A LINE OF CREDIT BY WHICH FIFTH THIRD COULD MAKE TWO LOANS — ONE FOR THE LIVESTOCK OPERATIONS AND ONE FOR THE GRAIN OPERATIONS. THE AGREEMENT PROVIDED THAT, EXCEPT AS EXPRESSLY MODIFIED THEREIN, THE 1994 AGREEMENT REMAINED UNALTERED AND IN FULL FORCE AND EFFECT. SECTION 8.2 OF THE 1994 AGREEMENT PROVIDED THAT IN THE EVENT OF ANY DEFAULT, FIFTH THIRD WAS ENTITLED TO CEASE ADVANCING MONEY AND TO DECLARE "ALL OBLIGATIONS TO BE DUE AND PAYABLE IMMEDIATELY * * *." "OBLIGATIONS" WAS DEFINED IN EXHIBIT 1 TO THE 1994 AGREEMENT AS "ALL LOANS, ADVANCES, INDEBTEDNESS AND OTHER OBLIGATIONS OF BORROWER OWED TO BANK OF EVERY DESCRIPTION WHETHER NOW EXISTING OR HEREAFTER ARISING * * *." BY THESE PROVISIONS, THE 1994 AGREEMENT INDICATES THAT UPON AN EVENT OF DEFAULT, FIFTH THIRD WAS ENTITLED TO ACCELERATE ALL OF THE LOANS UNDER THIS AGREEMENT, INCLUDING THE HOG OPERATIONS NOTE. ACCORDINGLY, EVEN THOUGH THERE WAS EVIDENCE THAT SHEPARD GRAIN HAD MADE SUBSTANTIAL PAYMENTS ON THE HOG OPERATIONS NOTE AND NO EVIDENCE THAT SHEPARD GRAIN HAD DEFAULTED THEREUNDER, THE TERMS OF THE 1994 AGREEMENT DEMONSTRATE THAT FIFTH THIRD PROPERLY ACCELERATED THE PAYMENT OF THAT NOTE DUE TO SHEPARD GRAIN'S NONCOMPLIANCE REGARDING THE GRAIN OPERATIONS LOAN. ACCORDINGLY, BECAUSE THE EVIDENCE DEMONSTRATED THAT SHEPARD GRAIN HAD DEFAULTED ON THE GRAIN OPERATIONS NOTE, SHEPARD GRAIN COULD NOT RAISE A MERITORIOUS BREACH OF CONTRACT DEFENSE REGARDING THE HOG OPERATIONS NOTE ON THE GROUND THAT FIFTH THIRD SOUGHT COMPLETE PAYMENT ON THE HOG OPERATIONS NOTE PRIOR TO APRIL 1, 2003, IN THE ABSENCE OF A DEFAULT ON THAT NOTE. WE THEREFORE CONCLUDE THAT THE TRIAL COURT ERRED IN FINDING THAT SHEPARD GRAIN HAD PRESENTED OPERATIVE FACTS IN SUPPORT OF A BREACH OF CONTRACT DEFENSE ON THE HOG OPERATIONS NOTE.
{¶ 67} THE TRIAL COURT CONCLUDED THAT SHEPARD GRAIN HAD PRESENTED POTENTIALLY MERITORIOUS DEFENSES OF BREACH OF AN ORAL CONTRACT AND PROMISSORY ESTOPPEL, BASED ON THE AFFIDAVITS OF BYRON AND MARK SHEPARD, IN WHICH THEY STATED THAT IN EXCHANGE FOR THE PLEDGE OF STOCK, FIFTH THIRD HAD PROMISED TO LOAN SHEPARD GRAIN FUNDS UNTIL OCTOBER 2003 AND TO WAIVE ANY DEFAULTS THAT MAY OCCUR. AS STATED ABOVE, THE PAROL EVIDENCE RULE PRECLUDES SHEPARD GRAIN FROM PRESENTING THIS EVIDENCE FOR THE PURPOSE OF ENFORCING THE TERMS OF THIS ALLEGED ORAL AGREEMENT, CONTRARY TO THE EXPRESS TERMS OF THE SUBSEQUENT WRITTEN, INTEGRATED AGREEMENTS IN NOVEMBER AND DECEMBER 2002. BECAUSE THE TRIAL COURT COULD NOT CONSIDER THIS EVIDENCE FOR THE PURPOSE OF ENFORCING THE TERMS OF THE ALLEGED AUGUST 2002 AGREEMENT, SHEPARD GRAIN HAS NOT PRESENTED EVIDENCE TO SUPPORT THE DEFENSES OF BREACH OF ORAL CONTRACT AND PROMISSORY ESTOPPEL. WE CONCLUDE THAT THE TRIAL COURT ERRED IN FINDING THAT SHEPARD GRAIN HAD PRESENTED OPERATIVE FACTS IN SUPPORT OF THOSE DEFENSES.
{¶ 68} AS FOR FRAUD IN THE INDUCEMENT, THE TRIAL COURT CONCLUDED THAT SHEPARD GRAIN HAD PRESENTED "OPERATIVE FACTS" WHICH INDICATED THAT FIFTH THIRD HAD THREATENED TO SELL THE PREVIOUSLY GIVEN SHARES OF FIFTH THIRD BANKCORP STOCK TO INDUCE SHEPARD GRAIN TO SIGN THE NOVEMBER AND DECEMBER 2002 AMENDMENTS. AS STATED ABOVE, THE TRIAL COURT PROPERLY CONCLUDED THAT PAROL EVIDENCE WAS ADMISSIBLE FOR THE PURPOSE OF ESTABLISHING FRAUD. IF PROVEN, THIS MAY BE SUFFICIENT TO ESTABLISH A MERITORIOUS DEFENSE OF FRAUDULENT INDUCEMENT. ACCORDINGLY, THE COURT DID NOT ABUSE ITS DISCRETION WHEN IT CONCLUDED THAT SHEPARD GRAIN HAD PRESENTED A POTENTIALLY MERITORIOUS DEFENSE BASED ON FRAUD.
{¶ 69} IN SUMMARY, THE TRIAL COURT IMPROPERLY CONCLUDED THAT SHEPARD GRAIN HAD PRESENTED POTENTIALLY MERITORIOUS DEFENSES OF BREACH OF CONTRACT REGARDING THE HOG OPERATIONS LOAN, BREACH OF AN ORAL AGREEMENT AND PROMISSORY ESTOPPEL. HOWEVER, THE COURT DID NOT ABUSE ITS DISCRETION WHEN IT CONCLUDED THAT SHEPARD GRAIN HAD PRESENTED A POTENTIALLY MERITORIOUS DEFENSE BASED ON FRAUD. BECAUSE THE TRIAL COURT COULD HAVE REASONABLY CONCLUDED THAT SHEPARD GRAIN PRESENTED A MERITORIOUS DEFENSE, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN GRANTING THE MOTION FOR RELIEF FROM JUDGMENT.
{¶ 70} THE SECOND ASSIGNMENT OF ERROR IS OVERRULED.
{¶ 71} THE TRIAL COURT'S ORDER GRANTING CIV.R. 60(B) RELIEF WILL BE AFFIRMED.
FAIN, P.J., AND YOUNG, J., CONCUR.
[1] Byron Shepard indicates that both of the agreements were signed in December of 2002, even though both had an effective date of November 1, 2002. Only the December 2002 Agreement expressly states that it was signed in December 2002 yet effective on November 1, 2002.
[2] Although not discussed in detail by the parties, the December 2002 Agreement also appears to change the $840,000 loan for livestock operations from a term loan to a revolving line of credit. However, the $840,000 note attached to Fifth Third's complaint is a term note, not a revolving note.